IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL T. ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>PADMA VEERU-COLLINGS, in her official capacity,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER**<br><br>Case No. 2:14-CV-00481<br><br>Judge Robert J. Shelby |

Michael T. Anderson brings an official-capacity suit against Padma Veeru-Collings, a prosecutor employed by Salt Lake City, to enjoin several state criminal prosecutions.[1] Mr. Anderson claims that Utah's municipal justice court system violated his constitutional rights by depriving him of the right to an unbiased magistrate in the first instance. The City moves to dismiss the Complaint, arguing that *Younger* mandates that this court abstain from hearing Mr. Anderson's claims. In response, Mr. Anderson seeks leave to amend his complaint and moves for a temporary restraining order against the Salt Lake County District Attorney's Office.

After careful consideration of these issues, the court concludes that the *Younger* doctrine applies to this case and bars the claims asserted in both Mr. Anderson's Complaint and proposed Amended Complaint. Accordingly, the Motion to Dismiss is GRANTED, the Motion for Leave to Amend is DENIED, and the Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.[2]

---

[1] An official-capacity suit should be treated as a suit against the municipal entity. *Kentucky v. Graham*, 105 S. Ct. 3099, 3105 (1985). Accordingly, the court will use "the City" to refer to Ms. Veeru-Collings.

[2] Dkt. Nos. 9, 10, 11.

The court also OVERRULES Mr. Anderson's Objection relating to rulings given on a status conference and DENIES his Motion for Reconsideration of Such Order.[3]

## BACKGROUND

This case arises out of a series of state misdemeanor and felony charges against the plaintiff, Mr. Anderson. Over the past year, the Salt Lake City Prosecutor's Office pursued five misdemeanor cases against Mr. Anderson.[4] The Salt Lake City Justice Court found Mr. Anderson guilty in each of these cases, resulting in convictions for criminal trespass, failure to pay a fee, and interference with a law enforcement officer. Mr. Anderson appealed his convictions to the Utah district court, where he was entitled under Utah law to a trial *de novo*.

During the pendency of his appeal, Mr. Anderson filed this action seeking to enjoin the City from proceeding with the misdemeanor cases or using the Salt Lake Justice Court in the future.[5] Mr. Anderson also sought a declaration that Utah's municipal justice court system, which allows the use of justice courts for misdemeanor cases, violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[6] Mr. Anderson filed a Motion for a Temporary Restraining Order and Preliminary Injunction with his Complaint.[7]

The court held a status conference to discuss Mr. Anderson's motion on July 30, 2014. At this hearing, the City represented that it would be willing to stay the misdemeanor cases in state

---

[3] Dkt. Nos. 19, 20.

[4] *See* Dkt. No. 3, at 4 (listing cases).

[5] Dkt. No. 3, at 28-29. In Utah, municipalities may create justice courts which have jurisdiction over class B and class C misdemeanors. Utah Code Ann. § 78A-7-106. A defendant who appeals from the justice court is entitled to a trial *de novo* in district court. *Id.* § 78A-7-118. Utah's justice courts lack jurisdiction over class A misdemeanors and felonies. *See id.* § 78A-7-106.

[6] *Id.* at 31.

[7] Dkt. No. 4.

court until the instant case was resolved.[8]  Based upon this representation, Mr. Anderson withdrew his Motion for a Temporary Restraining Order and Preliminary Injunction.  Following the status conference, the City filed a Motion to Dismiss, arguing that the *Younger* abstention doctrine barred Mr. Anderson's claims.[9]  Mr. Anderson responded by filing a Motion for Leave to Amend His Complaint for Declaratory and Injunctive Relief and a second Motion for Temporary Restraining Order and Preliminary Injunction.[10]  In his papers, Mr. Anderson sought to name Simarjit S. Gill, the Salt Lake County District Attorney, as an official-capacity defendant.[11]

In his second Motion for Temporary Restraining Order and Preliminary Injunction, Mr. Anderson moved to enjoin the County from proceeding with a pending state court felony case. Approximately four months before the City filed its Motion to Dismiss, but a few days after Mr. Anderson served the Complaint, the Salt Lake City Police Department arrested Mr. Anderson for aggravated assault, interference with an arresting office, public intoxication, and jaywalking.[12] Two months after this arrest, the County charged Mr. Anderson in the Third District Court for the State of Utah with a second-degree felony for purportedly assaulting a police officer.[13]  The County attached a probable cause statement to the Information describing jaywalking, a weapon,

---

[8] Dkt. No. 8.

[9] Dkt. No. 9.

[10] *See* Dkt. Nos. 9-12.

[11] Because the proposed Amended Complaint names Mr. Gill in his official capacity, the court will refer to Mr. Gill as "the County."

[12] Dkt. No. 11-1, at 3.

[13] Dkt. No. 16-1, at 2-3; Dkt. No. 16-2, at 2-3.

and an altercation between Mr. Anderson and two police officers.[14]  Based on the probable cause statement, the Third District Court issued a bench warrant for Mr. Anderson's arrest.[15]

In his papers, Mr. Anderson provides a different description of the events that gave rise to the felony case.[16]  Although he admits to carrying a three-and-a-half inch blade and encountering police officers on July 5, 2014, Mr. Anderson avers that he illegally crossed the street to avoid a ranting stranger.  Although the knife was originally clinched in his fist, Mr. Anderson states that he immediately threw the knife to the ground when he discovered that he was being followed by police officers.  Mr. Anderson states that he was not intoxicated at the time of his arrest.

After receiving Mr. Anderson's motions, this court held a second status conference to set a briefing schedule.  To preserve judicial resources and promote efficiency, the court invited the County to file a consolidate response to Mr. Anderson's motions.  Liberally construing Mr. Anderson's papers to include arguments directed at the City's Motion to Dismiss, the court also invited the City to file a reply memorandum with its opposition to Mr. Anderson's pending motions.  Shortly after the hearing, Mr. Anderson filed an objection to the scheduling order.[17]

## ANALYSIS

I.   **OBJECTION AND MOTION FOR RECONSIDERATION**

As a threshold matter, Mr. Anderson has filed a document styled as an "Objection to the Court's Order Dated October 3, 2014 'Status Conference' Hearing and His Motion for

---

[14] Dkt. No. 16-2, at 4-5.

[15] Dkt. No. 16-1, at 3-4.

[16] Dkt. No. 11-1, at 3-4; Dkt. No. 10, at 34-35.

[17] Dkt. Nos. 19, 20.

Reconsideration of Such Order."[18] Mr. Anderson believes that this court impermissibly ordered both parties to submit briefing even though the burden had shifted to the City and County.[19]

The court disagrees. During the status conference, the court invited the City and County to submit briefing on Mr. Anderson's pending motions and then invited Mr. Anderson to file a reply, if he elected to do so. This briefing schedule permitted the movants and opposing parties an adequate opportunity to address the issues as contemplated by the Federal Rules of Civil Procedure and the District of Utah Local Rules. Mr. Anderson has not shown that inviting briefing constituted the type of error that would justify reconsideration under Rule 60(b), nor has he provided the court with an adequate legal basis for sustaining his Objection. Accordingly, Mr. Anderson's Objection is overruled and his Motion to Reconsider is denied.

## II. MOTION TO DISMISS: *YOUNGER* ABSTENTION

The resolution of this case hinges on the reach of the *Younger* abstention doctrine, which prevents federal courts from entertaining suits for equitable relief when doing so would interfere with ongoing state proceedings.[20] Under *Younger*, a federal court must abstain when "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceeding involves important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[21]

---

[18] *Id.*

[19] Dkt. No. 20, at 3.

[20] *Younger v. Harris*, 401 U.S. 37 (1971).

[21] *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 875 (10th Cir. 2001) (quoting *Amanatullah v. State Bd. of Medical Examiners*, 187 F.3d 1160, 1163 (10th Cir.1999)).

### A.     Application

After careful consideration of the record and the parties' briefing, the court concludes that all three elements required for *Younger* abstention have been satisfied.

First, this case directly implicates ongoing state criminal proceedings. In his papers, Mr. Anderson references no less than six pending state criminal proceedings.[22] And in point of fact, the entire purpose of this suit is to enjoin state criminal proceedings.[23] Accordingly, the City has satisfied the first element of the *Younger* abstention doctrine.

Second, the state court provides an adequate forum to hear Mr. Anderson's claims. Utah courts possess concurrent jurisdiction over claims arising under 42 U.S.C. § 1983.[24] And here, Mr. Anderson has not demonstrated that the state courts are an inadequate forum to raise federal constitutional claims.[25] To the contrary, the Utah Supreme Court has recognized that a criminal defendant may challenge the constitutional validity of the justice court system during a trial *de novo* and on appeal.[26] In this respect, Mr. Anderson may challenge the constitutionality of Utah's justice courts in a state forum.[27]

Furthermore, to the extent that Mr. Anderson seeks to enjoin a criminal proceeding that began in the Third District Court, Mr. Anderson fails to articulate a separate cause of action in either the Complaint or the proposed Amended Complaint, both of which are predicated on the

---

[22] *See* Dkt. Nos. 3, 11.

[23] Dkt. Nos. 3, 10.

[24] *See, e.g., Peak Alarm Co. v. Salt Lake City Corp.*, 243 P.3d 1221, 1249 (Utah 2010).

[25] *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").

[26] *W. Jordan City v. Goodman*, 135 P.3d 874, 878-80 (Utah 2006); *cf. J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999) (framing inquiry in terms of whether a claim "could have been raised").

[27] *Goodman*, 135 P.3d at 878-80.

theory that the justice court system—not the state district courts—deprived Mr. Anderson of his constitutional rights.[28] This suggests that the state court is a more appropriate and adequate forum than this one to challenge the legality of Mr. Anderson's felony charges.[29]

Mr. Anderson, however, suggests that the Utah Supreme Court's decision in *West Jordan City v. Goodman* demonstrates that his constitutional claims would receive poor treatment in the state system. The court disagrees. *Goodman* involved a state constitutional challenge, rather than a federal constitutional challenge.[30] More importantly, the Utah Supreme Court's holding was based on the fact that the defendant not only failed to develop a factual record below but also failed to adequately brief the issues on appeal.[31] Indeed, the Utah Supreme Court left open the possibility that conflicts of interest may compromise the impartibility of a municipally employed judge.[32] For these reasons, the court concludes that *Goodman* did not foreclose the opportunity to bring in state court a federal constitutional challenge to the justice court system.

Third, Mr. Anderson's criminal charges implicate important state interests. Here, the City has an interest in the enforcement of state statutes and its city ordinances.[33]

Because all three elements are satisfied, the *Younger* abstention doctrine bars the claims unless Mr. Anderson demonstrates that extraordinary circumstances trigger one of the limited exceptions to the doctrine.

---

[28] Dkt. Nos. 3, 10.

[29] Dkt. No. 16, at 6; *see also Goings v. Sumner Cnty. Dist. Attorney's Office*, 571 F. App'x 634, 638 (10th Cir. 2014) ("In any event, it is beyond cavil that a state court is an adequate forum for the resolution of challenges to distinctly state prosecutorial or court procedures or processes.").

[30] *Goodman*, 135 P.3d at 876.

[31] *Id.* at 879-80.

[32] *Id.* at 883.

[33] *Aid for Women v. Foulston*, 441 F.3d 1101, 1119 (10th Cir. 2006) ("[T]he government has a strong interest generally in the enforcement of its criminal laws.").

**B.     Exception**

Although *Younger* abstention is "non-discretionary," the Tenth Circuit has recognized that it may not extend to extraordinary circumstances. Specifically, *Younger* is inapplicable "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in extraordinary circumstances where irreparable injury can be shown."[34] An injury is irreparable only when the threat to federally protected rights "cannot be eliminated by . . . defense against a single prosecution."[35]

When evaluating whether a state prosecution has been commenced in bad faith or with the intent to harass, courts look to three factors: "(1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions."[36] When seeking to avoid *Younger* abstention, the plaintiff bears a "heavy burden" and must set "forth more than mere allegations of bad faith or harassment."[37]

Mr. Anderson has failed to carry his burden of showing that extraordinary circumstances justify a deviation from the *Younger* doctrine. Although Mr. Anderson appears to argue that he suffers an irreparable injury by having to challenge the constitutionality of the justice court in multiple proceedings,[38] the Supreme Court has held that injuries "incidental to every criminal

---

[34] *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 876-77 (10th Cir. 2001) (internal quotation marks and citation omitted).

[35] *Phelps v. Hamilton,* 122 F.3d 885, 889 (10th Cir.1997).

[36] *Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160, 1165 (10th Cir. 1999).

[37] *Weitzel*, 240 F.3d at 876-77 (internal quotation marks and citation omitted).

[38] Dkt. No. 10, at 44-45; Dkt. No. 11-1, at 22-35.

proceeding brought lawfully and in good faith" do not constitute the type of irreparable injury that would justify an extraordinary interference with state proceedings. Here, Mr. Anderson has not shown any injuries outside the ordinary prosecution of the criminal proceedings.[39]

Mr. Anderson also argues that there is sufficient evidence of bad faith or harassment to justify a departure from *Younger*. Mr. Anderson's arguments are myriad. For example, Mr. Anderson briefly argues that the Utah judiciary is biased against him. Mr. Anderson maintains that state officials retaliated against him for filing this lawsuit and that the criminal charges are unsupported by probable cause.[40] Citing a Tenth Circuit decision and two Fifth Circuit cases,[41] Mr. Anderson asserts that the temporal proximity between the filing of this case and his arrest by the Salt Lake City Police Department demonstrates that state officials intended to deter him from exercising his rights in the state criminal cases and his federal civil cases.[42] Mr. Anderson also seeks a negative inference from the fact that a City prosecutor referenced his felony charges in a hearing for one of his misdemeanor cases.[43] Finally, Mr. Anderson maintains that the only

---

[39] Although Mr. Anderson briefly argues that an arrest may prevent him from litigating his constitutional claims in this and other proceedings, incarceration is often an inconvenient by-product of a lawful arrest. But this does not necessarily mean that Mr. Anderson suffered an irreparable injury, especially where he will be able to bring constitutional claims either in the state cases or by seeking post-conviction relief. *See, e.g.*, *Wilder v. Adams Cnty. Dist. Court*, 310 F. App'x 228, 229 (10th Cir. 2009); *Sweeten v. Sneddon*, 463 F.2d 713, 715 (10th Cir. 1972).

[40] *See, e.g.*, Dkt. No. 11-1, at 24-25; Dkt. No. 21, at 12-13.

[41] Dkt. No. 11-1, at 26-29 (citing *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), *Poole v. Cnty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001), and *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir. 1981)). The court concludes that these decisions are factually distinguishable or unpersuasive. In *Wilson v. Thompson*, a criminal case was revived after law enforcement officers, who had recently been served with a civil rights action, approached the state court judge to discuss renewing the criminal proceeding. 593 F.2d 1375, 1379-81 (5th Cir. 1979). In *Poole v. County of Otero*, the Tenth Circuit's holding arose out of the standard for malicious prosecution claims, the *Younger* doctrine was not even at issue, and the plaintiff alleged that the police officers named in the underlying civil rights suit caused criminal charges to be brought against the defendant. 271 F.3d 955, 959-60 (10th Cir. 2001), *abrogated by Hartman v. Moore*, 126 S. Ct. 1695 (2006). Finally, *Fitzgerald v. Peek* lacks any discussion of facts that would permit this court to evaluate its persuasiveness. 636 F.2d 943, 944-45 (5th Cir. 1981) (per curiam).

[42] *See, e.g.*, Dkt. No. 11-1, at 26-29.

[43] *See, e.g.*, Dkt. No. 21, at 4-7.

evidence against him comes from law enforcement officers and suggests that these officers should be required to submit to polygraph examinations.[44]

None of these arguments—standing alone or together—is sufficient to demonstrate bad faith or harassment under the factors set out by the Tenth Circuit. First, although he questions the impartiality of the state bench and the honesty of law enforcement officers, Mr. Anderson has not presented any affirmative proof that either the misdemeanor or felony cases were "frivolous or undertaken with no reasonably objective hope of success."[45] To the contrary, the fact that the justice courts found Mr. Anderson guilty in the misdemeanor cases and the Third District Court issued a warrant in the felony case suggests there is at least a factual and legal basis for bringing criminal charges against Mr. Anderson. The court will further note that Mr. Anderson appears to admit at least some of the facts underlying the felony case in his proposed Amended Complaint, which further suggests that the case is not entirely frivolous.

Second, Mr. Anderson has failed to demonstrate that the criminal charges were brought "in retaliation for the defendant's exercise of constitutional rights."[46] As a preliminary matter, Mr. Anderson focuses almost entirely on the felony case, and he fails to present any evidence that the misdemeanor cases, which were the proceedings that Mr. Anderson sought to enjoin in the first instance, were brought in retaliation for exercising his constitutional rights. But even when the court considers the subsequent felony case, there is insufficient evidence of retaliation. For one thing, although Mr. Anderson points to a vaguely shared interest in protecting Utah's municipal court system, he has not presented specific evidence of collusion between the City and the County, let alone a sweeping conspiracy involving judges from different courts, judicial staff,

---

[44] *See, e.g.*, Dkt. No. 11-1, at 29, 30-31 (citing treatises).

[45] *Weitzel*, 240 F.3d at 876-77.

[46] *Id.*

prosecutors from different municipalities, and police officers. And while temporal proximity may be probative of retaliation in some cases, such an inference is necessarily weakened in this case by the fact that separate municipal entities independently charged Mr. Anderson based on unrelated events. Stated differently, Mr. Anderson's general allegations, without more, are insufficient to demonstrate retaliation or harassment under Tenth Circuit case law.

Third and finally, Mr. Anderson has not demonstrated that these independent criminal cases were "conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions."[47] In this case, it appears that each prosecution arose out of an independent set of facts. The mere fact that different municipal entities brought charges based on different events by itself does not rise to the level of harassment or abuse of prosecutorial discretion sufficient to trigger an exception, especially where there appears to be a factual predicate for the state criminal cases.

As noted, a party invoking the exceptions to the *Younger* doctrine bears a heavy burden. Here, Mr. Anderson has not demonstrated that exceptional circumstances provide a basis to depart from the general principle that a district court must abstain from granting injunctive relief when doing so would directly interfere with pending state criminal proceedings.[48] Accordingly, the court grants the City's Motion and dismisses the Complaint.

---

[47] *Id.*

[48] Mr. Anderson briefly argues that the burden of proof has shifted to the City to rebut the presumption of a bad faith prosecution. Dkt. No. 21, at 18-21. Because Mr. Anderson failed to meet this initial burden, the court need not reach this issue.

**III.  MOTION TO AMEND**

Twenty-eight days after the City served its motion, Mr. Anderson sought leave to amend his Complaint.[49]  The Federal Rules of Civil Procedure promote liberal amendment to pleadings so that claims may be heard on their merits.[50]  Under Rule 15(a), this court "should freely give leave when justice so requires."[51]  At the same time, however, an amendment may be denied when the nonmovant demonstrates "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies previously allowed, undue prejudice [or] futility."[52]

In this case, Mr. Anderson's motion must be denied because it both fails to cure the deficiencies of the original Complaint and the proposed amendment would be futile.  Except for claims for injunctive and declaratory relief, Mr. Anderson's proposed Amended Complaint does not assert any new claims against the County.  Notably, the central theory of recovery in the proposed Amended Complaint continues to be the unconstitutionality of Utah's justice court system, which is not at issue in the County's felony case.  But even setting these concerns aside, Mr. Anderson's proposed amendment would be futile because the *Younger* doctrine operates as a jurisdictional bar to a claim for equitable relief against the County for the reasons discussed in Part I.[53]  Accordingly, Mr. Anderson's Motion for Leave to Amend is denied.

---

[49] Dkt. No. 10.

[50] *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

[51] Fed. R. Civ. P. 15(a)(2).

[52] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

[53] *Cf. Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997) (concluding appellate court lacked jurisdiction to consider appeal of denial of motion to amend because the *Younger* doctrine deprived the trial court and appellate court of jurisdiction).

## IV. MOTION FOR TEMPORARY RESTRAINING ORDER

In his second Motion for a Temporary Restraining Order and Preliminary Injunction, Mr. Anderson asks this court to enjoin the County from proceeding with the felony case.[54] The Tenth Circuit has recognized that the *Younger* doctrine may impose some jurisdictional limitation on granting certain types of relief.[55] Because this court must decline to exercise jurisdiction over Mr. Anderson's claims for equitable relief, the Motion for Temporary Restraining Order and Preliminary Injunction is denied as moot.[56] In doing so, the court makes no judgment on the arguments in Mr. Anderson's motion but instead invites him, if he elects to do so, to raise his claims for injunctive and declaratory relief in a more appropriate forum.

## CONCLUSION

For the reasons stated above, the court rules as follows on the pending motions:

1. Mr. Anderson's Objection (Dkt. No. 19) is OVERRULED;
2. Mr. Anderson's Motion for Reconsideration (Dkt. No. 20) is DENIED;
3. the City's Motion to Dismiss (Dkt. No. 9) is GRANTED;
4. Mr. Anderson's Motion for Leave to Amend (Dkt. No. 10) is DENIED; and
5. Mr. Anderson's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 11) is DENIED;

Accordingly, Mr. Anderson's case is DISMISSED WITHOUT PREJUDICE to pursue in state court. The Clerk of Court is directed to close the case.

SO ORDERED this 13th day of November, 2014.

---

[54] Dkt. No. 11-1.

[55] *Compare D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.8 (10th Cir. 2013) *cert. denied*, 133 S. Ct. 2831 (U.S. 2013), *with Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997); *see also Chapman v. Barcus*, 372 F. App'x 899, 901 (10th Cir. 2010).

[56] *Phelps*, 122 F.3d at 891.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge